## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHELA GRIMES,

    Plaintiff,

V.                                    CASE NO.:

KEYMARK CORPORATION OF FLORIDA,

    Defendant,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHELA GRIMES, (hereinafter "Ms. Grimes" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, KEYMARK CORPORATION OF FLORIDA, (hereinafter "KEYMARK" or Defendant") and states the following:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on disability, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII")

and its implementing Regulations; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"). In addition, Plaintiff seeks to redress violations by Defendant of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) ("FFCRA"), including provisions of the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA") contained therein, and its implementing Regulations; the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"); the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"); the Workers' Compensation Law §440.205 Florida Statutes.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her disability, sexually harassed her, and retaliated against her in violation of her rights under Title VII and the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FFCRA and FMLA rights and unlawfully retaliated against her for exercising those rights in violation of the FFCRA, FMLA, and FLSA.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to

Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Polk County, Florida.

## PARTIES

8.     The Plaintiff is SHELA GRIMES, a twenty-nine-year-old African American female who resides in Polk County, Florida that has been diagnosed with ovarian cysts. Ms. Grimes' ovarian cysts cause her to constantly suffers from a dull ache in her lower abdomen that creates sudden, severe abdominal pain at times that normally induces fever and vomiting.

9.     Plaintiff is a member of a class protected against discrimination based on her disability and gender by Title VII and the FCRA.

10.     During the period from July 25, 2019, until August 4, 2020, Defendant employed Plaintiff.

11.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

4

12.     At all times material herein, Plaintiff was an employee entitled to protection as defined by the FFCRA, FLSA, and FMLA.

13.     The Defendant is KEYMARK CORPORATION OF FLORIDA, a Florida corporation located at 2540 Knights Station Road, Lakeland, Florida 33810 in Polk County.

14.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Polk County, Florida.

15.     At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the FCRA, FFCRA, FLSA, and FMLA.

16.     Accordingly, Defendant is liable under Title VII and the FCRA for the unlawful discrimination, sexual harassment, and retaliation to which it subjected Plaintiff and is liable under the FFCRA and FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FFCRA, FLSA, and FMLA as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On November 4, 2020, Plaintiff timely filed a dual Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability and gender discrimination, sexual harassment, and retaliation. A true and accurate copy of Plaintiff's Charge of Discrimination, dated November 4, 2020, is attached hereto, and incorporated herein as **Exhibit "A."**

19.     On November 15, 2021, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 511-2021-00361) against Defendant. A true and accurate copy of the EEOC's Notice of Right to Sue, dated November 15, 2021, is attached hereto, and incorporated herein as **Exhibit "B."**

20.     This action is filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue, dated November 15, 2021, from the EEOC in reference to EEOC Charge No. 511-2021-00361.

21.     Further, more than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is also entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22.     All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23.     On July 25, 2019, Keymark hired Ms. Grimes as a mill packer in the Packing Department. As a mill packer, Ms. Grimes was responsible for stacking and piling finished products into containers at the end of the paint line.

24.     Ms. Grimes performed a lot of lifting, pushing, bending, and twisting to package heavy aluminum products sometimes weighing well over one hundred pounds. Dusley Bello (department manager) and Luis Alicea (packing supervisor for second shift) supervised Ms. Grimes and said that she did an excellent job performing her duties.

25.    On March 20, 2020, Ms. Grimes changed positions and began working as a table packer on the day shift under the supervision of Jose Matos (department manager) and Dale Humphreys (packing supervisor for first shift). As a table packer, Ms. Grimes' duties consisted of packing aluminum profiles brought to the packing department on racks.

26.    On March 31, 2020, Ms. Grimes was involved in a motor vehicle accident outside of work. As a result of her accident, Ms. Grimes was instructed to take three days off work and to return to work under light duty restrictions.

27.    On April 6, 2020, Ms. Grimes returned to work with a medical restriction stating that she could not lift more than twenty-five pounds.

28.    On May 8, 2020, while working as a table packer, Ms. Grimes began to experience severe abdominal pain after lifting a piece of metal. As a result of the pain, Ms. Grimes had to go to the emergency room. Ms. Grimes told the ER doctor that she began experiencing severe abdominal pain after lifting a heavy piece of metal. The ER doctor discovered that one of her ovarian cysts had burst. The ER doctor told Ms. Grimes that she could return to work in three days.

29.    Ms. Grimes discussed her injury and need for a new position with Michael Wren (Supervisor of Strategic staffing & Organizational Development) and Barbara Batista-Lopez (Human Resources Specialist). Ms. Grimes asked if she would be receiving pay and medical coverage under Keymark's workers compensation plan. Both Ms. Wren and Ms. Batista-Lopez let Ms. Grimes know that they did not consider her injury to be work related and that she would need to pay for her own medical care. They did however find a position for Ms. Grimes as an overnight cleaner.

30.    On May 18, 2020, Ms. Grimes began working as an overnight cleaner and reported to Guy Callahan.

31.    Almost immediately after starting as an overnight cleaner, Ms. Grimes began receiving text messages from Mr. Alicea (packing supervisor) that were inappropriate and she told him the same.

32.    In June of 2020, Ms. Grimes began receiving similar text messages from Mr. Callahan and being asked by Mr. Callahan to spend extended periods of time in his office talking about personal matters. Ms. Grimes let Mr. Callahan know that she did not think it was appropriate for him to be texting her and asking her to spend so much time in his office as her coworkers would get the wrong impression. Mr. Callahan simply said,

"I'm your boss don't worry about what your coworkers think." Ms. Grimes then let Mr. Callahan know that she was also uncomfortable spending the time alone with him and would prefer to just do her job.

33.     Following this conversation, Mr. Callahan wrote Ms. Grimes up three times for three unrelated events in retaliation for complaining to him about his text messages and frequent requests to sit with him in his office. Ms. Grimes refused to read or sign the write ups and requested a meeting with Ms. Batista-Lopez.

34.     On July 15, 2020, Ms. Grimes had a meeting with Ms. Batista-Lopez. Ms. Grimes showed Ms. Batista-Lopez all the text messages that she had received from Mr. Alicea and Mr. Callahan. Ms. Batista-Lopez asked if either of them had every touched her and -    Grimes let her know that they had not. Ms. Batista-Lopez said that if they did not touch her that there was nothing that she could do.

35.     Following the meeting with Ms. Batista-Lopez, Ms. Grimes met with the Plant Manager, Leo Slecton. Ms. Grimes tried to show Mr. Slecton the text messages she had received, but he said that that was not his concern and he just wanted to know why she refused to sign the coaching forms that Mr. Callahan had presented to her. Ms. Grimes explained to Mr. Slecton that

Mr. Callahan had only written her up because she complained about his text messages and constant requests for her to spend time with him in his office.

36.    Mr. Slecton agreed that Mr. Callahan should not have performed three separate write ups but that she should have at least received one for taking an extended break. Mr. Slecton then suspended Ms. Grimes for two days for refusing to sign the write ups presented by Mr. Callahan.

37.    Ms. Grimes accepted her suspension but asked to report to a different supervisor. Mr. Slecton obliged and told Ms. Grimes she would report to Joel Collazo upon her return.

38.    On July 19, 2020, Ms. Grimes again began to feel a sharp pain in her abdomen after lifting cleaning supplies. As a result of the pain, Ms. Grimes had to leave work and go to the ER.

39.    At the ER, the doctor found that another ovarian cyst had burst. Dr. Steven Guggino instructed Ms. Grimes to remain out of work until July 23, 2020, and provided her with a note stating the same.

40.    On July 23, 2020, Ms. Grimes provided her paperwork from the ER to Ms. Batista-Lopez who once again said Ms. Grimes' injury was not work related. Additionally, Ms. Batista-Lopez stated that Mr. Slecton instructed her that Ms. Grimes would need to get tested for COVID-19 and

quarantine for fourteen days before being allowed to return to work. Ms. Grimes questioned this policy as she had no COVID-19 related symptoms at that time, but Ms. Batista-Lopez told her that was the policy and that she had to remain home in quarantine without pay.

41.     On August 4, 2020, Ms. Grimes returned to work. While working she asked Mr. Collazo if he could help her lift the cleaning supplies onto her cart so that she would not get hurt again. Mr. Collazo told Ms. Grimes that it was her job and that she needed to do it on her Own. When Ms. Grimes reiterated that she was concerned that she would hurt herself again, Mr. Collazo sent her home and told her that she was suspended for failing to perform her job duties.

42.     Following this conversation, Ms. Grimes called Keymark multiple times but was never allowed to return to work.

## COUNT I
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Disability Discrimination

43.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44.     Plaintiff, a twenty-nine-year-old African American female diagnosed with ovarian cysts, is a member of a protected class by way of her disability (Ovarian Cysts).

45.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of Title VII.

46.     At all times material herein, Defendant employed, and continues to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

47.     Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

48.     At all times material herein, Defendant employed Plaintiff.

49.     At all times material herein, Plaintiff's supervisor Joel Collazo harassed and discriminated against Plaintiff because of her disability (Ovarian Cysts).

50.     Defendant, as Plaintiff's employer, was obligated to guard against the harassment of Plaintiff by her co-workers, supervisors, managers, and other persons and to protect Plaintiff from harassment in the workplace.

51.     However, Plaintiff, was subjected to a hostile work environment because of her disability through disparate treatment, a failure to accommodate, demeaning comments and behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, including but not limited to Mr. Collazo, as more particularly alleged hereinabove.

52.     Plaintiff believed that Mr. Collazo's offensive acts and statements materially altered the terms and conditions of her employment. Further, a reasonable person would have found that Mr. Collazo's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

53.    Plaintiff did not welcome the offensive statements, acts, harassment, disparate treatment and did not directly or indirectly invite or solicit them by her own acts or statements.

54.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about Mr. Collazo's harassment of Plaintiff, but did not take prompt remedial action to eliminate the hostile work environment.

55.    Defendant violated Title VII by subjecting Plaintiff to harassment because of her disability by failing to promptly correct Mr. Collazo's harassment once it learned of it.

56.    Further, Defendant failed to prevent and promptly correct this illegal workplace harassment. Defendant's supervisors, managers, and Human Resources personnel who learned about the objectionable workplace conduct and harassment of Plaintiff by Mr. Collazo failed to promptly take steps to correct the conduct of Mr. Collazo who, like Plaintiff, was under their supervision, management, and control.

57.    Instead, as more particularly alleged hereinabove, Defendant's personnel further perpetuated the discrimination and hostile work environment by terminating Plaintiff's employment on August 4, 2020.

58.     The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, discrimination, and disparate treatment of Plaintiff, deprived her of statutory rights under Title VII.

59.     Defendant's actions constitute discrimination and retaliation in violation of Title VII.

60.     As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant,

KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the hostile work environment and discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff any and all other damages available under Title VII, including, but not limited to, the damages set forth above and

other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT II
## VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT
### Sexual Harassment

61.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

62.     Plaintiff, a twenty-nine-year-old African American female is a member of a protected class by way of her gender.

63.     At all times material herein, Plaintiff was employed by Defendant and Defendant was an "employer" within the meaning of Title VII.

64.     At all times material herein, Defendant employed, and continues

to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of Title VII. 42 U.S.C. § 2000e(b).

65.     Moreover, Defendant is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(a). Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) in that, the definition "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." 42 U.S.C. § 2000e(a).

66.     At all times material herein, Defendant employed Plaintiff.

67.     At all times material herein, Plaintiff's supervisors Mr. Alicea and Guy Callahan harassed and discriminated against Plaintiff because of her gender.

68.     Defendant, as Plaintiff's employer, was obligated to guard against the harassment of Plaintiff by her co-workers, supervisors, managers, and other persons and to protect Plaintiff from harassment in the

workplace.

69.     However, Plaintiff, was subjected to a hostile work environment because of her gender through disparate treatment, pretextual admonishment, demeaning comments and behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, including but not limited to Mr. Alicea and Guy Callahan, as more particularly alleged hereinabove.

70.     The harassment and disparate treatment of Plaintiff by Defendant and its employees, supervisors, managers, and other agents was so frequent and severe that it created a hostile work environment for Plaintiff.

71.     Mr. Alicea and Guy Callahan's offensive acts and statements, more particularly described herein above, were so severe and pervasive that they materially altered the terms and conditions of Plaintiff's employment.

72.     Plaintiff believed that Mr. Alicea and Guy Callahan's offensive acts and statements materially altered the terms and conditions of her employment. Further, a reasonable person would have found that Mr. Alicea and Guy Callahan's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

73.    Plaintiff did not welcome the offensive statements, acts, harassment, disparate treatment and did not directly or indirectly invite or solicit them by her own acts or statements.

74.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about Mr. Alicea and Guy Callahan's harassment of Plaintiff, but did not take prompt remedial action to eliminate the hostile work environment.

75.    Defendant violated Title VII by subjecting Plaintiff to harassment because of her gender by failing to promptly correct Mr. Alicea and Guy Callahan's harassment once it learned of it.

76.    As more particularly alleged hereinabove, Defendant's managers and Human Resources personnel, who supervised and managed both Plaintiff, Mr. Alicea, and Guy Callahan, were informed of Mr. Alicea and Guy Callahan's harassment by Plaintiff.

77.    While Plaintiff expressed concerns regarding the discriminatory treatment she had been receiving while employed with Defendant, her concerns were not investigated, and the discriminatory behavior of Mr. Alicea and Guy Callahan toward Plaintiff continued.

78.    Further, Defendant failed to prevent and promptly correct this

illegal workplace harassment. Defendant's supervisors, managers, and Human Resources personnel who learned about the objectionable workplace conduct and harassment of Plaintiff by Mr. Collazo failed to promptly take steps to correct the conduct of Mr. Collazo who, like Plaintiff, was under their supervision, management, and control.

79.    Instead, as more particularly alleged hereinabove, Defendant's managers and Human Resources personnel further perpetuated the discrimination and hostile work environment by reprimanding and disciplining Plaintiff under false pretenses and subjecting her to further disparate treatment in connection with her request for worker's compensation assistance.

80.    Plaintiff, by being subjected to this harassment, discrimination, disparate treatment, and hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

81.    As more particularly alleged hereinabove, instead of correcting the discriminatory behavior, Defendant terminated Plaintiff's employment on August 4, 2020.

82.    The conduct of Defendant, by and through its employees,

supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, discrimination, and disparate treatment of Plaintiff, deprived her of statutory rights under Title VII.

83.    Defendant's actions constitute discrimination and retaliation in violation of Title VII.

84.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of Title VII, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to her family and relationships, and other nonpecuniary losses and intangible injuries.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII of the Civil Rights Act, as amended, and its implementing Regulations, discriminating against Plaintiff based on her disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of the discrimination to which Defendant subjected her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the hostile work environment and discrimination he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to Title VII;

D.    Award Plaintiff any and all other damages available under Title VII, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under Title VII, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.     Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATIONS OF THE FAMILIES FIRST CORONAVIRUS ACT AND THE FAMILY AND MEDICAL LEAVE ACT
### FFCRA (EFMLEA)/FMLA Retaliation

85.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

86.    The prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA, 29 U.S.C. § 2615, apply to employers with respect to eligible employees taking, or attempting to take, leave under the FFCRA's EFMLEA. 29 C.F.R. § 826.151(a).

87.    Under the FMLA, it is unlawful for an employer to take action against an employee because the employee exercises her FMLA rights. The

FMLA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual" for asserting her rights under the FMLA. 29 U.S.C. § 2615(a)(2).

88.    As more particularly alleged hereinabove, at all times material herein, Plaintiff was and is an "eligible employee" and Defendant was and is an "employer" within the meaning of the FFCRA's EFMLEA and the FMLA.

89.    As more particularly alleged hereinabove, Plaintiff qualified for leave under the FFCRA's EFMLEA and the FMLA as she had been employed by Defendant for at least thirty (30) calendar days preceding her notice to Defendant that he would need to take leave related to COVID-19.

90.    Plaintiff engaged in statutorily protected activity by exercising her rights to take leave under the FFCRA's EFMLEA and FMLA.

91.    Defendant knew that Plaintiff was exercising her rights under the FFCRA's EFMLEA and FMLA and was aware of Plaintiff's right to protected leaves of absence under the FFCRA's EFMLEA and FMLA.

92.    Defendant violated the FFCRA's EFMLEA and the FMLA and retaliated against Plaintiff by, among other things; reprimanding/disciplining Plaintiff under false pretenses and terminating

Plaintiff's employment under false pretenses.

93.    Defendant terminated Plaintiff in retaliation for her protected activity.

94.    A causal connection exists between Plaintiff's requesting, taking and/or attempting to take expanded family and medical leave and Defendant's adverse employment actions and ultimate decision to terminate Plaintiff's employment.

95.    As more particularly alleged herein above, Defendant terminated Plaintiff without a legitimate nondiscriminatory basis for the decision.

96.    Defendant's aforementioned actions and omissions constitute violations of the FFCRA and FMLA.

97.    As a direct and proximate result of Defendant's retaliatory and unlawful conduct, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FFCRA's EFMLEA and FMLA and, as such, is entitled to legal relief.

98.    In addition, Plaintiff is entitled to appropriate equitable relief

including employment, reinstatement, and/or promotion. 29 U.S.C. § 2617(a)(1)(B).

99.     Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it was not violating the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

100.    Finally, Plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action. 29 U.S.C. § 2617(a)(3).

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant violated the FFCRA (EFMLEA)/FMLA and engaged in unlawful conduct and employment practices prohibited by the FFCRA (EFMLEA)/FMLA in that Defendant discharged, disciplined, discriminated against and/or retaliated against Plaintiff for taking leave under the FFCRA (EFMLEA) and exercising her rights under the

FFCRA (EFMLEA)/FMLA;

B.      Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FFCRA (EFMLEA)/FMLA, and to otherwise make her whole for any losses suffered because of such unlawful employment practices in violation of the FFCRA (EFMLEA)/FMLA;

C.      Award Plaintiff liquidated damages as recoverable under the FFCRA (EFMLEA)/FMLA and as consistent with law;

D.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E.      Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F.      Grant such other and further relief as this Court may deem equitable, just, and proper.

**COUNT IV**
**VIOLATIONS OF THE FAMILIES FIRST CORONAVIRUS ACT AND**
**THE FAIR LABOR STANDARDS ACT**
**FFCRA (EPSLA)/FLSA Retaliation**

101.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

102.  The FFCRA's Emergency Paid Sick Leave Act ("EPSLA") requires employers to provide up to eighty (80) hours of paid sick leave to eligible full-time employees who were unable to work (or telework) due to a need for leave because such employees were subject to a Federal, State, or local quarantine or isolation order related to COVID-19; advised by a health care provider to self-quarantine due to concerns related to COVID-19; experiencing symptoms of COVID-19 and seeking medical diagnosis from a health care provider, due to the COVID-19 pandemic (during the effective period from April 2, 2020 to December 31, 2020).

103.  The FFCRA's EPSLA provides that it is unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who exercises his or her right to take leave in accordance with this Act. Id. at § 5104.

104.   The FFCRA's EPSLA further provides that an employer who willfully violates section 5104 shall (1) be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3)); and (2) be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. §§ 216; 217) with respect to such violation. Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs.

105.   At all times material herein, Plaintiff was an employee, and Defendant was and is an employer, within the meaning of the FFCRA (EPSLA)/FLSA.

106.   At all times material herein, Plaintiff was an "employee" within the meaning of the FFCRA (EPSLA) as she met the definition of an employee as defined by section 3(e) of the FLSA (29 U.S.C. § 203(e)). At all times material herein, Defendant was and is an "employer" within the meaning of the FFCRA (EPSLA) as Defendant was and is a person who is a "covered employer" as defined by the FFCRA (EPSLA) engaged in commerce or an industry affecting commerce in that Defendant was and is "a public agency or any other entity that is not a private entity or individual" that "employs 1 or more employees".

107. Further, at all times material herein, Plaintiff was an eligible employee within the meaning of the FFCRA (EPSLA) as she was unable to work due to a need for leave because she had experienced symptoms of COVID-19 and seeking medical diagnosis from a health care provider.

108. Defendant knew that Plaintiff was an eligible employee within the meaning of the FFCRA (EPSLA).

109. As more particularly alleged herein above, Plaintiff was eligible for and put Defendants on notice of her need for Emergency Paid Sick Leave during the period that she was unable to work due to experiencing symptoms of COVID-19 and seeking medical diagnosis from a health care provider.

110. Plaintiff engaged in statutorily protected activity by exercising her right to request, take and/or attempt to take Emergency Paid Sick Leave in accordance with the FFCRA (EPSLA).

111. Defendant knew that Plaintiff was exercising her rights under the FFCRA (EPSLA) and was aware of Plaintiff's right to take Emergency Paid Sick Leave under the FFCRA (EPSLA).

112. Defendant willfully violated the FFCRA (EPSLA)/FLSA and retaliated against Plaintiff by, among other things,

reprimanding/disciplining Plaintiff under false pretenses, and terminating Plaintiff's employment under false pretenses.

113. A causal connection exists between Plaintiff's requesting and/or taking of Emergency Paid Sick Leave under the FFCRA (EPSLA) and Defendant's adverse employment actions and ultimate decision to terminate Plaintiff's employment.

114. As more particularly alleged herein above, Defendant terminated Plaintiff without a legitimate nondiscriminatory basis for the decision.

115. Defendant's aforementioned actions and omissions constitute willful violations of the FFCRA (EPSLA)/FLSA.

116. As a direct and proximate result of Defendant's retaliatory and unlawful conduct and willful violations of the FFCRA (EPSLA)/FLSA, Plaintiff has suffered, continues to suffer, and will suffer damages including, but not limited to, lost wages, salary, employment benefits and other compensation lost by reason of Defendant's unlawful conduct in violation of the FFCRA (EPSLA)/FLSA and, as such, is entitled to legal relief.

117. Further, Plaintiff is entitled to liquidated damages as Defendant did not act in good faith and had no reasonable grounds for believing that it

was not violating the FFCRA (EPSLA)/FLSA.

118. Finally, Plaintiff is entitled to reasonable attorney's fees, reasonable expert witness fees, and other costs of the action.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant violated the FFCRA (EPSLA)/FLSA and engaged in unlawful conduct and employment practices prohibited by the FFCRA (EPSLA)/FLSA in that Defendant discharged, disciplined, discriminated against and/or retaliated against Plaintiff for taking COVID-19 Leave under the FFCRA (EPSLA) and exercising her rights under the FFCRA (EPSLA)/FLSA;

B.   Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of the FFCRA (EPSLA)/FLSA, and to otherwise

make her whole for any losses suffered because of such unlawful employment practices in violation of the FFCRA (EPSLA)/FLSA;

C.      Award Plaintiff liquidated damages as recoverable under the FFCRA (EPSLA)/FLSA and as consistent with law;

D.      Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E.      Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT,
## FLORIDA STATUTES §§ 760.01-11
## Disability Discrimination

119.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 61 of this Complaint as though fully set forth herein.

120.    Plaintiff, a twenty-nine-year-old African American female diagnosed with ovarian cysts, is a member of a protected class under the

FCRA, §§ 760.01-760.11, Florida Statutes, by way of her disability (Ovarian Cysts).

121.   At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

122.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

123.   At all times material herein, Defendant employed, and continues to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

124.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more

particularly described hereinabove, constitute unlawful harassment and discrimination based on her disability.

125.   As her employer, Defendant was obligated to guard against the harassment, disparate treatment, and discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from harassment and discrimination in the workplace.

126.   Defendant violated the FCRA by, among other things, failing to promptly correct the Mr. Collazo's harassment, disparate treatment, and discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to harassment, disparate treatment, and a hostile work environment because of her disability.

127.   Plaintiff, by being subjected to this harassment, disparate treatment, discrimination, and a hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

128.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative

and remedial action to prevent the harassment, disparate treatment, and discrimination of Plaintiff, deprived her of statutory rights under the FCRA.

129.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on her race and national origin;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.     Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.     Award Plaintiff any and all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest;

F.     Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

<u>COUNT VI</u>
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,**
**FLORIDA STATUTES §§ 760.01-11**
**Sexual Harassment**

130.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 and 62 through 84 of this Complaint as though fully set forth herein.

131.   Plaintiff, a twenty-nine-year-old African American female, is a member of a protected class under the FCRA, §§ 760.01-760.11, Florida Statutes, by way of her gender.

132.   At all times material herein, Plaintiff was employed by Defendant and Defendant was and is an "employer" within the meaning of the FCRA.

133.   Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any

other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

134.   At all times material herein, Defendant employed, and continues to employ, one hundred (100) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

135.   The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful harassment and discrimination based on her gender and created a hostile work environment.

136.   As her employer, Defendant was obligated to guard against the harassment, disparate treatment, and discrimination of Plaintiff by her co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from harassment and discrimination in the workplace.

137.   Defendant violated the FCRA by, among other things, failing to promptly correct the Mr. Alicea and Guy Callahan's harassment, disparate treatment, and discriminatory conduct toward Plaintiff once it learned of it

and by subjecting Plaintiff to harassment, disparate treatment, and a hostile work environment because of her disability.

138.  Plaintiff, by being subjected to this harassment, disparate treatment, discrimination, and a hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of her employment with Defendant.

139.  The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, disparate treatment, and discrimination of Plaintiff, deprived her of statutory rights under the FCRA.

140.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on her gender;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered because of Defendant's discrimination against her, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.     Award Plaintiff any and all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest;

F.     Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.     Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT VII
### WORKER'S COMPENSATION RETALIATION
### FLORIDA STATUTES §440.205

141.   Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 42 of this Complaint as though fully set forth herein.

142.   Plaintiff brings an action under the Workers' Compensation Law §440.205, Florida Statutes, for unlawful retaliation.

143.   Plaintiff filed a statutorily protected Workman's Compensation claim.

144.   On May 8, 2020, Plaintiff put Michael Wren and Barbara Batista-Lopez on notice that she was injured while on the job.

145.   Both Mr. Wren and Ms. Batista-Lopez let Ms. Grimes know that they did not consider her injury to be work related and that she would need to pay for her own medical care.

146.   On July 19, 2020, Plaintiff put Barbara Batista-Lopez on notice that she was injured while on the job. Ms. Lopez again said Ms. Grimes' injury was not work related.

147.   On July 23, 2020, Ms. Batista Lopez notified Plaintiff that she needed to get tested for COVID-19 and quarantine for fourteen days before being allowed to return to work.

148.   On August 4, 2020, Ms. Grimes returned to work. While working she asked Mr. Collazo if he could help her lift the cleaning supplies onto her cart so that she would not get hurt again. Mr. Collazo told Ms. Grimes that it was her job and that she needed to do it on her Own. When Ms. Grimes reiterated that she was concerned that she would hurt herself again, Mr. Collazo sent her home and told her that she was suspended for failing to perform her job duties.

149. Following this conversation, Ms. Grimes called Keymark multiple times but was never allowed to return to work.

150. Instead, as more particularly alleged hereinabove, Defendant's managers and Human Resources personnel terminated Plaintiff under false pretenses in connection with her request for worker's compensation assistance.

151. Plaintiff's termination is an adverse employment action.

152. Plaintiff's termination on August 4, 2020, is clearly retaliation against her resulting from her filing of a workman's compensation claim. As such, it directly violates § 440.205 Florida Statutes.

153. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to her family and relationships; and (d) other economic losses proximately caused and allowable under §440.205, Florida Statutes according to proof. These damages have occurred in the past, are permanent and continuing.

WHEREFORE, the Plaintiff, SHELA GRIMES, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KEYMARK CORPORATION OF FLORIDA, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.      Grant judgment in favor of Plaintiff and declare that Defendant violated § 440.205 Florida Statutes and engaged in unlawful conduct and employment practices prohibited by the § 440.205 Florida Statutes in that Defendant discharged, disciplined, discriminated against and/or retaliated against Plaintiff for exercising her rights under § 440.205 Florida Statutes;

B.      Award damages to Plaintiff for lost wages, salary, employment benefits, and all other compensation denied or lost resulting from Defendant's unlawful conduct and employment practices in violation of § 440.205 Florida Statutes, and to otherwise make her whole for any losses suffered because of such unlawful employment practices in violation of § 440.205 Florida Statutes;

C.      Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by

47

Defendant's conduct and actions, pursuant to and within the statutory limitations of § 440.205 Florida Statutes;

D.   Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

E.   Award Plaintiff her attorneys' fees, reasonable expert witness fees, and the costs of this action; and

F.   Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 13th day of January 2022.

/s/ Jason W. Imler, Esq
Jason W. Imler
Florida Bar No. 1004422
**Imler Law**
19409 Shumard Oak Dr., Unit 103
Land O' Lakes, Florida 34638
(P): 813-553-7709
Jason@ImlerLaw.com